**Albert Gene HAYES, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–16939.**

Court of Criminal Appeals of Oklahoma.

Nov. 15, 1971.

Don Anderson, Public Defender, for plaintiff in error.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Ray Parks, Legal Intern, for defendant in error.

BUSSEY, Presiding Judge:

Albert Gene Hayes, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Oklahoma County, Oklahoma for the offense of Manslaughter in the First Degree. His punishment was fixed at four (4) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Floyd Waters testified that he was the manager of the Hudson Rooms, a hotel, at 125½ South Hudson in Oklahoma City. The defendant was employed at the hotel as a handy man. At approximately midnight on December 25, 1970, Jack Riddle, the deceased, came to the lobby which was located upstairs in the hotel and purchased a bottle of wine from the defendant. Riddle, who in Waters' opinion was drunk, attempted to open the bottle of wine and was informed by Waters that he could not drink in the lobby. Waters returned to his bedroom, and shortly thereafter, heard someone falling down the stairs. He returned to the lobby and observed Riddle rolling down the stairs. The defendant and Waters went down to the bottom of the stairs, and thinking that Riddle was just drunk, drug him outside onto the sidewalk.

Harriet Haney testified that she was in the office-bedroom at the Hudson Hotel with Waters and Mae Allbright. She heard some kind of commotion in the lobby, which sounded like someone falling. She observed the defendant come into the bed-

room with a "stick like a billy club" and put it in the storage part of the kitchen stove. She attempted to go into the lobby, and was advised by the defendant not to get involved.

Mae Allbright testified that she was in the office-bedroom with Waters and Harriet Haney on the evening in question. She testified that Waters and Riddle had an altercation, and Waters returned to the room. Riddle then started down the stairs, passing the defendant, who was standing in the doorway. Riddle walked down three steps and turned around, wherein the defendant hit Riddle with his fist and knocked him down the stairs. On cross examination, she admitted testifying differently at the Preliminary Hearing, but stated that she was telling the complete truth at the trial.

Robert Huebner testified that he was living at the Hudson Hotel and was awakened sometime around midnight by a disturbance in the lobby. He heard the defendant tell someone to "get his ass down the stairs," and then heard the sound of blows and someone falling down the stairs.

Officer Barber testified about taking pictures at the scene, which were introduced in the evidence.

Dr. Charles Marshall testified that he performed an autopsy upon the deceased. He testified that there was superficial abrasions over the face and beneath the chin, numerous skull fractures on the right and left sides extending from the top of the head to the base of the skull, and a fracture of the skull above the back part of the nose. He testified that in his opinion the cause of death was subdural hemorrhage producing pressure inside the skull. The findings were consistent with a "blunt force type of injury."

Officer Christian testified that he interrogated the defendant at the city jail about 3:00 o'clock a. m. After advising the defendant of his Miranda warning, the defendant made an oral statement to Christian, which was typed by a secretary, and read to the defendant, who signed the same.

In the statement the defendant admitted that he slapped Riddle and that Riddle fell down the stairway.

The defendant testified that he was attempting to persuade Riddle, the deceased, from creating the disturbance and from drinking in the lobby. Riddle had previously had some altercation with Waters which was broken up by the defendant. Riddle attempted to strike the defendant near the stairway entrance, wherein the defendant slapped Riddle and told him to leave. Riddle was leaning up against the wall as the defendant started back to his room, wherein the defendant heard the noise of Riddle falling down the stairs. Defendant testified that he could not read and that the statement made to the police officer, wherein he admitted striking Riddle and Riddle falling down the stairs, was taken out of context.

█ The first proposition asserts that the evidence is insufficient. We have consistently held that the credibility of the witness and the weight and value to be given to the testimony is within the exclusive province of the jury to determine, and the jury may believe the evidence of a single witness upon a question of facts and disbelieve several others testifying to the contrary. Humphrey v. State, Okl.Cr., 452 P.2d 590. We are of the opinion that there is competent evidence, if believed, in the Record from which the jury could reasonably conclude that the defendant is guilty as charged, and under said circumstances, this Court will not interfere with the verdict, since it is the exclusive province of the jury to weigh the evidence and determine the facts.

█ The final proposition contends that the jury heard evidence of other crimes. The witness Huebner testified over defendant's objection that he had seen the defendant roll a man down the stairs, and that "I have just about been rolled one time myself." The general rule in this state is that when a defendant is put upon trial for one offense he is to be convicted, if at all, by evidence which shows that he is

guilty of that offense alone and the admission of evidence of other crimes, either prior or subsequent to the offense for which he is on trial, is inadmissible. However, evidence of separate and similar offenses is admissible when it is material and proper to show (1) motive; (2) intent; (3) absence of mistake or accident; (4) identity of the person charged with the commission of the crime for which an accused is put on trial; and, (5) common scheme or plan embracing the two or more crimes so related to each other that proof of one tends to establish the other. Moulton v. State, Okl.Cr., 476 P.2d 366. We are of the opinion that the testimony offered by the witness Huebner was properly admitted as coming within the exception to the general rule.

In conclusion, we observe that the Record is free of any error which would justify modification or require reversal, and under said circumstances, we are of the opinion that the judgment and sentence should be, and the same is, accordingly, affirmed.

BRETT, J., concurs.